Scott, J.
Where an action is brought to recover damages for maliciously, and without probable, cause, procuring by affidavit, and employing the statutory aid of an attachment, in *550 a civil action, is it essential to the plaintiff’s right of recovery that he should aver in his pleading, and prove upon the trial, that such attachment had, before suit brought, been discharged, or otherwise judicially determined, adversely to the claim of the party charged with having wrongfully invoked its aid? This is the question presented by the record in this case.
In an action for a malicious prosecution, which, strictly speaking, is only where the prosecution complained of was upon a criminal charge, it is well settled that the prosecution must be shown to be at an end; and it must also appear that the plaintiff’ was acquitted of the charge. And the general rule is the same, where a groundless and malicious civil suit constitutes the cause of actidn.
But the reason of this rule can only apply to suits in which the prosecutor or plaintiff,'in the suit complained of, tenders an issue to the defendant, involving an inquiry into the existence of probable cause. "Where the defendant has his day in court upon the trial of this issue, it is but reasonable to require that he shall, by the result of the trial, show the criminal charge to be unsustained by proof, or the alleged cause of action to be invalid, before he shall be permitted to claim, in another suit, that either was malicious and without probable cause. Were the rule otherwise, a recovery might be had for a malicious prosecution, and the plaintiff still be convicted, or have judgment against him, in the former suit.
But the defendants in error did not bring their action to recover for a malicious prosecution, strictly speaking; nor for the malicious and groundless instituting and prosecuting of a civil suit. They admit that they were indebted to Eortman. But they complain, that for purposes of mere oppression, he wantonly, maliciously, and without probable cause, by his own false affidavit, of an ex parte character, procured an attachment to be issued, under the statute, as auxiliary to his suit. That such a wrong will constitute a valid cause of action, would seem reasonable, *551 and was expressly held in the case of Tomlinson and Sperry v. Warner, 9 Ohio Rep. 103.
Eortman could not, under the statute, have procured the auxiliary process of attachment, without first showing, by affidavit, not only the nature, justice and amount of his claim, but also the existence of some one or more of nine specified particulars. (Swan’s Stat. 505.) This he did, by affirming that the defendants were about to convert their property, or a part thereof, into money, for the purpose of placing it beyond the reach of their creditors. Now, if the affidavit was false in this particular, and if Eortman had no good reason to believe it true, there would he a clear absence of probable cause. But the subsequent proceedings in the cause would not, necessarily, involve an inquiry into the truth or falsity of this part of the affidavit; nor would the final judgment at all determine this question. The existence of the debt, which is all that the judgment ascertains, does not, of itself, constitute probable cause for the attachment. 9 Ohio Rep. 103.
The general principle seems to be, that when the termination of the former suit can neither tend to establish nor invalidate the plaintiff’s cause of action, it is not necessary to aver such termination. Accordingly, it was held, in Grainger v. Hill, 33 E. C. L. Rep. 328, where the plaintiff complained of an abuse of the process of law, for the purpose of extorting property, to which the defendants had no claim, that the abuse having been perpetrated, and the defendants having attained their end by it, it was immaterial whether their suit was terminated or not.
But, it is said that the attachment which is complained of, must have been discharged, or otherwise terminated, in favor of the plaintiffs, before they can maintain their action. We are inclined to think that this is not necessary. The ancillary process of attachment is obtained on an ex parte affidavit, in the absence of the party against whose property it is issued. He has no opportunity to defend against the issuing of it. And the existence of *552 probable cause for its issuing, is not required to be shown in any part of the subsequent proceedings. It is true that the defendants in that action might have moved for a discharge of the attachment, and thus have had the truth of the alleged grounds upon which it was issued, inquired into by the court. But were they bound to submit this question to the justice for review ? He had already passed upon it, in their absence; and much of the injury of which they complain had been already done them. When the question of fact, whether this had been done without probable cause, was to be inquired into, upon their motion, had they no right to a choice of forum? or to a trial by jury ?
As an item of evidence, tending to show the existence of probable cause, we suppose it would have been competent to prove, on the trial of this action, that no effort was made by the plaintiff to procure the discharge of the attachment. Such fact, if unexplained, would tend strongly to show acquiescence, and might be regai’ded as an admission of the existence of probable cause. But its conclusive character is a different question.
The plaintiff in error could have dismissed his attachment at his own pleasure; and as a recovery could be had against him in this suit only upon proof that he resorted to this kind of process maliciously, from a wanton intention to injure his debtors, in their character or property, we think he has little right to complain that they did not interfere actively, to have him legally restrained from farther persistence in wrong-doing.
The general rule which we have here recognized, was established in reference to cases where the judicial determination of the former suit, if adverse to the plaintiff, Would conclusively show the existence of probable cause, and where the plaintiff in fact had or would have his day in court upon that question.
• The • numerous authorities referred to by counsel for plaintiff in error, show its application in such cases only. -Where the reason of the rule ceases, the rule itself is not *553 to be applied. And we cannot think it applicable to an action brought for the malicious use, or rather abuse, of the process of attachment allowed by our present statute. Such would seem to be the analogies of the law, and the conclusions of principle. See Bump v. Betts, 19 "Wend. 421, where it was held that the rule does not apply where the malicious prosecution complained of, arises out of proceedings on attachment in the absence of the party defendant, in which no opportunity is afforded him to defend the suit.
The interests of a party may imperatively require that his property shall be released from a wrongful attachment, without delay. May he not, in such a case, promptly procure the discharge of the attachment, by payment of the claim on which it is founded, or by executing an undertaking according to statute, and thus arrest the threatened ruin, without abandoning his right to redress for the injury already done him ? The proceedings in attachment would thus be terminated, but not adversely to the claim of the party who sued out the process. Nor would such a termination conclusively show that the process was rightfully sued out.
Ve see no good reason for holding that, as a condition precedent to redress, the injured party must have an inquiry instituted into the merits of the attachment, and a decision in his favor by the justice of the peace, or perhaps by an appellate court, and in the meantime permit the consequences of the wrong to run their full course.

Judgment of superior court affirmed.

Swan, C. J., and Brinkerhoff, and Peck, JJ., concurred.